## CARMICHAEL et al. v. DELTA DRILLING CO.

### No. 6590.

Court of Civil Appeals of Texas. Texarkana.

Oct. 4, 1951.

Rehearing Denied Nov. 8, 1951.

Pollard, Lawrence & Reeves, Tyler, J. N. Saye, Longview, for appellants.

Blalock, Blalock, Lohman & Blalock, Houston, Smith & Smith, Tyler, Edward Kliewer, Jr., Dallas, for appellee.

HALL, Chief Justice.

On September 1, 1942, appellants and appellee entered into a "Joint Operating Agreement" whereby appellee was to furnish two of its drilling rigs in prospecting for oil and gas in Illinois, Indiana and Kentucky. The agreement provided that: "It is the desire of Delta to place said drilling equipment in charge of Carmichael-Johnston (appellants), who, up to this time, have been in the employ of Delta Drilling Company, for the purpose of operating them on a profit sharing basis instead of as employees of Delta, as heretofore, and Carmichael-Johnston desire to take charge of and operate said equipment on such basis, it is agreed between the parties as follows: From and after this date, the said Carmichael-Johnston shall take charge of the drilling equipment herein described and operate it for the joint benefit on a profit sharing basis." The method of a division of the profits was agreed upon. The agreement provided fur-

ther that it was not to be construed as a partnership but merely a working agreement between Delta and Carmichael-Johnston for the operation of said equipment and declaring Carmichael and Johnston as agents of appellee Delta Drilling Company, etc. Some two hundred wells were drilled under this agreement.

Aside from and in addition to, the "Joint Operating Agreement" appellants alleged an oral agreement which they assert was consummated in the latter part of November, 1945, between them and J. Zeppa, president of appellee company, which controlled the development of an 80-acre lease located in Posey County, Indiana, and known as the Elliott Lease. This alleged oral contract forms the basis of this lawsuit. Appellee leveled fifteen exceptions to appellants' first amended original petition, all of which were sustained. They declined to amend their pleadings and the cause was dismissed.

Appellants' first point is: "The trial court erred in holding that it did not have jurisdiction of plaintiffs' cause of action." This point is based upon the action of the court in sustaining appellee's special exceptions 1, 2, 3 and 4, which challenged the jurisdiction of the court to try this cause. Appellants in their brief clearly state their view of the nature of their cause of action: "It is readily seen from a reading of the prayer that this is a suit for an accounting for oil produced from an oil lease in Indiana and for an order of the court directing the defendant to specifically perform a contract with plaintiffs to convey to them an undivided one-fourth interest in said oil and gas lease, or in lieu thereof, that plaintiffs have judgment for the value of the lease. The court has jurisdiction over the defendant itself by reason of the fact that the defendant has appeared in the case and filed two answers." Appellee contends that the nature of appellants' suit is one to try title to the 80-acre leasehold in the state of Indiana and that the trial court was without jurisdiction to try same. The allegations in appellants' first amended original petition will determine which of the above contentions is correct and will control the disposition of this appeal.

Appellants' pleadings denote that their claim is for 25% of the value of the oil sold from the 80-acre lease located in Indiana from the early part of 1946 until the trial of the suit, which is based upon a claim by them of a one-fourth interest in the 80-acre leasehold estate. In their prayer they seek judgment for the 25% of the profits accruing from said lease and also pray that "Delta Drilling Company be required by an order of this court to execute, acknowledge and deliver to plaintiffs (appellants) a good and sufficient assignment of an undivided one-fourth working interest in and to said Elliott 80-acre oil and gas lease to these plaintiffs." It is true the 80-acre lease here involved was purchased by appellant Carmichael for appellee, Delta Drilling Company, in the latter part of 1941, before the execution of the "Joint Operating Agreement," but while Carmichael was an employee of Delta Drilling Company. There is no contention here that the 80-acre lease was not wholly owned by Delta up to the time appellants brought in an oil well on same in the latter part of 1946, under the alleged oral agreement.

Throughout the plaintiffs' pleadings it is asserted that by virtue of their operation in drilling an oil well on the 80-acre lease and their supervision of same in producing the oil under the terms of the alleged oral agreement they are the owners of a one-fourth working interest in said lease. Appellants allege that by making certain charges against them in connection with the drilling of the oil well on the 80-acre lease appellee recognized them as part owners of such lease. In other words, it is appellants' claim that they have done and performed every act required of them under the oral agreement to constitute them owners of a one-fourth undivided interest in the 80-acre lease and for that reason they pray that appellee be required to execute to them an assignment of their asserted interest. They make no claim to the title of any part of the 80-acre lease under their written contract of

September 1, 1942. Appellants can assert no claim to the 25% of the net oil runs from the 80-acre Elliott lease except by virtue of their claim of ownership of an undivided one-fourth interest therein on account of their having performed their part of the oral agreement which entitles them to such interest. In such circumstances, it is our opinion, that to determine the rights of appellants in the cause of action asserted by them in their pleadings, it would have been necessary for the trial court to try the title to the 80-acre leasehold located in the State of Indiana, since their allegations amount to a claim by them of a present equitable title to an undivided one-fourth interest in said lease, as distinguished from an equitable right to title. In the case of Pickle v. Whitaker, Tex.Civ.App., 224 S.W.2d 741, 745 (writ of error refused), it is held: "Where a vendee has performed and delivered the consideration entitling him to a conveyance, an equitable title is created. Vendee is entitled to recover on the title so created, and the court will so decree and the remedy of specific performance is unnecessary and is not awarded. Secrest v. Jones, 21 Tex. 121–124; Stafford v. Stafford, 96 Tex. 106, 70 S.W. 75; Johnson v. Wood, 138 Tex. 106, 157 S.W.2d 146. An equitable title is the present right to the legal title. Tanner v. Imle, Tex.Civ.App., 253 S.W. 665." Colquitt v. Eureka Producing Co., Tex.Com.App., 63 S.W.2d 1018 and Lucia v. Adams, 36 Tex.Civ.App. 454, 82 S.W. 335. See also Choice v. Texas Co., D.C., 2 F.Supp. 160. The fact that appellants seek also to recover one-fourth of the value of the oil runs from the lease in question under their alleged oral agreement would avail them nothing since both the claim for oil runs and title to the undivided one-fourth interest in the leasehold located in Indiana are referable to the same oral agreement. The suit for the title to the leasehold interest being unenforceable their claim for the value of one-fourth of the oil runs from said lease would also fail because the alleged oral agreement is entire and not several. Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147 (Com.App., opinion adopted). The case of Copper State Mining Co. v. Kelvin Lumber & Supply Co., Tex.Com.App., 227 S.W. 938, cited by appellants, presents a different factual situation and for that reason is not in point.

As we view appellants' pleadings, as a whole, they assert an equitable title to a one-fourth interest in the leasehold estate and the only action available to them would be an action of trespass to try title. The equitable remedy of specific performance would not lie. Rogers v. Daniel Oil & Royalty Co., 130 Tex. 386, 110 S.W.2d 891; Municipal Gas Co. v. Lone Star Gas Co., Tex.Civ.App., 259 S.W. 684, affirmed 117 Tex. 331, 3 S.W.2d 790, 58 A.L.R. 797.

The 80-acre leasehold estate is located in the State of Indiana, and our Supreme Court has, from an early date, held that the courts of this state have no power or jurisdiction to adjudicate title to land in another state. It was held in Holt v. Guerguin, 106 Tex. 185, 163 S.W. 10, 12, 50 L.R.A.,N.S., 1136 that: "As shown by the cases cited above, this court has from the beginning denied to courts of other states and countries the power to adjudicate the title to land lying in this state, and we cannot consistently hold that our courts can exercise that authority over lands situated in other jurisdictions, but must observe the same rule that we demand be observed by others."

It is our conclusion, then, that the trial court was correct in sustaining special exceptions 1, 2, 3 and 4 to appellants' amended petition challenging the right of the district court of Smith County to try this cause of action for the reasons set out above.

The above conclusion renders unnecessary any discussion of the other points advanced by appellants.

The judgment of the trial court is affirmed.