**Anne B. MILLER, et al., Appellants,**

v.

**Laurence D. MILLER, III, Appellee.**

**No. 14447.**

Court of Appeals of Texas,
Austin.

Aug. 1, 1986.

Rehearing Denied Sept. 24, 1986.

Fred R. Jones, Sawtelle, Goode, Davidson & Troilo, San Antonio, for appellants.

Steven A. Fleckman, Scanlan, Buckle & Fleckman, Austin, Russell J. Weintraub, Austin, for appellee.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

GAMMAGE, Justice.

We withdraw our earlier opinion in this cause, handed down July 23, 1986, and substitute in lieu thereof the following:

Anne B. Miller and the trustee and beneficiaries of a trust she created appeal from the adverse judgment of the trial court in favor of Laurence D. Miller, III. Because the court below was without jurisdiction to adjudicate title to Oklahoma land, we will set aside the judgment of the trial court and dismiss the appeal.

Anne and Laurence D. Miller, Jr., married in 1978. They were still married at the time of Miller, Jr.'s death on July 15, 1981, although they were separated and divorce proceedings were pending. Laurence D. Miller, III, the decedent's son by a previous marriage, was the executor and sole devisee of his father's estate. The estate includes oil and gas mineral rights located in Oklahoma and held by decedent as his separate property before and during his marriage, as well as monetary proceeds received after death from the leasing of those mineral interests. At the time of decedent's death, Oklahoma had a "forced heirship" statute which entitled a surviving spouse to one-half of *all* property included in the decedent's estate, notwithstanding

the provisions of a will to the contrary. 1941 Okla.Sess.Laws § 1, at 476.[1]

A summary of the procedural history of this appeal follows. Anne sued Miller, III in the district court of Travis County to recover a statutory family allowance to the Oklahoma property. Miller, III filed a counterclaim, which was severed from Anne's original action, seeking a declaratory judgment that title to the Oklahoma property passed to him under the will. In an ancillary probate proceeding in Oklahoma, Anne filed a renunciation of the will. Miller, III then filed a motion for partial summary judgment on his counterclaim in the Travis County suit. Anne agreed in that proceeding that no genuine issues of material fact existed with regard to ownership of the Oklahoma mineral rights, but contested the jurisdiction of a Texas court to adjudicate title to real property in Oklahoma.

Miller, III amended his counterclaim to request, in addition to an adjudication of the ownership of the Oklahoma mineral rights, a mandatory injunction compelling Anne to convey to him by quitclaim deed any ownership interest she claimed in the property. Anne then filed a motion in the Oklahoma probate proceeding seeking a partial distribution of the Oklahoma property. Before a hearing on this motion could be held in Oklahoma, the Travis County court enjoined Anne from taking any action to adjudicate ownership of the Oklahoma property in any proceeding other than the one pending in Travis County.

On November 23, 1983, the trial court notified counsel by letter that it intended to grant the motion for partial summary judgment, and requested counsel for Miller, III to prepare a proposed judgment. Instead, Miller, III filed a supplemental motion for partial summary judgment seeking an adjudication that the Oklahoma property passed pursuant to decedent's will and that Anne

be permanently restrained from taking any action in the Oklahoma probate proceeding. Before a hearing was held on the amended motion, Anne created a trust for the benefit of one of her grandchildren and four of her five children, executing quitclaims of her interest in the Oklahoma property in favor of a trustee named in the trust and delivering the quitclaims to the trustee.

At the hearing on the supplemental motion for summary judgment Anne's counsel informed the trial court of the existence of the trust and the quitclaims. Miller, III filed an application for temporary injunction to restrain Anne from recording the quitclaims in Oklahoma which was granted on March 21, 1984. Miller, III also filed a petition alleging civil contempt and urging that the trust and conveyances be set aside as fraudulent. Miller, III impleaded the trustee and beneficiaries of the trust as cross-defendants in his counterclaim and filed a motion for summary judgment on the supplemental cross-petition, to which Anne responded with specific objections and verified denials. The trial court then advised counsel by letter of its intention to grant the motions for partial summary judgment, to require Anne, the trustee and trust beneficiaries to quitclaim the Oklahoma property to Miller, III, and to find that the creation of the trust and the conveyances to it violated the court's original injunction and were fraudulent and void.[2] When the trial court entered its judgment to this effect, appellants brought this appeal raising numerous points of error.

By their first point of error, appellants contend that the trial court was without jurisdiction to adjudicate title to real property in Oklahoma, and that its judgment is therefore void. In reply, appellee contends that a Texas court may properly determine the rights of parties before it to real property located in another state, and effectu-

1. During the pendency of this proceeding, the statute was amended to provide that a surviving spouse will take by forced heirship only one-half of a decedent's property *acquired by joint industry during coverture.* Under this amendment Anne would not have inherited the miner-

al rights from decedent under Oklahoma law. Okla.Stat. tit. 84, § 44 (Supp.1985).

2. The deeds have been executed and delivered to counsel for Miller, III pending the outcome of this appeal. The trial court also severed the contempt action from this cause.

ate those rights through the issuance of decrees acting directly on the parties. The mineral interests at issue here are interests in real property. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982).

The courts of this state are without power or jurisdiction to adjudicate title to land in another state. *Holt v. Guerguin*, 163 S.W. 10 (Tex.1914); *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458 (Tex.Civ.App. 1951, writ ref'd); *Youree v. Pires*, 5 S.W.2d 178 (Tex.Civ.App.1928, writ ref'd); *Estabrook v. Wise*, 506 S.W.2d 248 (Tex.Civ. App.), *vacated as moot*, 519 S.W.2d 632 (Tex.1974); *Simmons v. O'Connor*, 149 S.W.2d 1107 (Tex.Civ.App.1941, writ dism'd, judgmt. cor.).

It is true that under the law of Texas a court has the power by decree to compel a party over whom it has jurisdiction to execute a conveyance of real property situated in another state. *McElreath v. McElreath*, 162 Tex. 190, 345 S.W.2d 722 (1961). This power was first recognized by the Texas Supreme Court in *Texas & P. Ry. Co. v. Gay*, 26 S.W. 599 (Tex.1894). That case relied on the decision of the United States Supreme Court in *Massie v. Watts*, 10 U.S. (6 Cranch) 148, 3 L.Ed. 181 (1810), which held that an equity court having jurisdiction over the parties could properly enforce an in personam obligation by ordering the defendant to convey land located in another state. *Massie* stands for the proposition that where the defendant is under a personal obligation with respect to property, a court of equity can enforce that obligation if it has jurisdiction over the parties regardless of the location of the *res*. As Chief Justice Marshall stated for the Court:

> Was this cause, therefore, to be considered as involving a naked question of title ... the jurisdiction of the Circuit Court of Kentucky would not be sustained. But where the question changes its character, where the defendant in the original action is liable to the plaintiff, either as a consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides*

practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found, and the circumstance, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction.

*Id.*, 10 U.S. at 158. The inquiry before the Court in *Massie* was "whether this be an unmixed question of title, or a case of fraud, trust or contract." *Id.* at 160. The Court found that it had jurisdiction as the defendant was liable either "under his contract, or as trustee." *Id.* at 163.

In *Texas & P. Ry. Co. v. Gay, supra*, the distinction was explained as applying in cases involving the adjudication of preexisting rights arising out of contracts and other transactional relationships between the parties and not in cases involving the adjudication of a dispute over title to the property:

> If a person be under contractual obligation to convey lands, a court of equity having jurisdiction over his person may compel him to make the necessary conveyance, although the land is in another state; but in such case the decree and process through which it is enforced create no right to the thing, and only enforce the specific right created by the contract. The same jurisdiction may be exercised when land is held in trust, whether this arises from contract, devise or fraud; but in such cases the court simply compels the person over whom it has jurisdiction to pass to another title to the specific thing on account of a fixed right to it, existing when the suit was brought. If, however, the right or claim which a court in one state attempts to enforce against lands situated in another be one that arises from its decree and execution of its process, then the court is directly acting upon the thing over which it has not jurisdiction, and to such a case the rule cannot be applied.

26 S.W. at 605–606. In *Holt v. Guergin, supra*, the Texas Supreme Court held that a Texas court could not acquire jurisdiction

of land beyond its borders, and that a decree setting aside and anulling a deed to land in Mexico was void:

> [A]lthough in cases of trust, of contract, and of fraud the jurisdiction of a court of chancery may be sustained over the person, notwithstanding lands not within the jurisdiction may be affected by the decree [Massie v. Watts, *supra*], yet it does not follow that such a decree is in itself necessarily binding upon the courts of the state where the land is situated. To declare the deed to Mrs. Strange null and void, in virtue alone of the decree in New York, would be to attribute to that decree the force and effect of a judgment in rem by a court having no jurisdiction over the res.

163 S.W. at 12.

In *Youree v. Pires, supra,* the Court of Civil Appeals applied this rule in a contest to the will of a Texas decedent which devised property located in Louisiana. Because the challenge to the paragraph devising the out-of-state property was "in effect, to cancel a muniment of title, and thereby adjudicate title to lands in another state," the suit was not simply a will contest and could not be tried in Texas. 5 S.W.2d at 179.

*Estabrook v. Wise, supra,* was a suit brought by a former wife to require her former husband to convey a one-half interest in out-of-state mineral rights allegedly acquired during the marriage. The Court of Civil Appeals characterized the dispute as one in which one spouse perpetrated a fraud on the other by purchasing the mineral interests with community funds. The rule that the Texas courts lack subject matter jurisdiction of disputes involving title to out-of-state land was cited with approval. 506 S.W.2d at 252. *See also* 1 McDonald, Texas Civil Practice §§ 1.07.2–.3 at 28–30 (Rev. ed. 1981).

Appellee cites Restatement (Second) of Conflict of Laws § 55 (1971) which states: "A state has power to exercise judicial jurisdiction to order a person, who is subject to its judicial jurisdiction, to do, or not to do, an act in the state, although the carrying out of the decree may affect a thing in another state." Comment "b" to this section states: "A decree of the sort dealt with in this Section may be issued whenever the defendant is under a personal obligation, subject to enforcement by a court of equity, to do the act in question. Such decrees are most frequently issued to rectify fraud or to enforce a trust or contract. [*Massie v. Watts, supra.*]" All the examples cited in the Restatement deal with contracts to convey land or situations involving fraud.

As is demonstrated by the cases and the Restatement, the power of a court of one state to compel a party to convey real property located in another state has always been limited in its application, subject to the ultimate restriction that it cannot be applied in cases which involve a direct adjudication as to title to real property. Where none of these situations is present, and the case involves a "naked question of title," a Texas court has no jurisdiction to adjudicate title to lands located in another state. *Holt v. Guerguin, supra; Carmichael v. Delta Drilling Co., supra; Youree v. Pires, supra; Estabrook v. Wise, supra; Simmons v. O'Connor, supra.*

The controversy here presented involves an adjudication of title to real property located in Oklahoma. Appellee sought a determination that title passed to him under the will and the judgment reflects the trial court's belief that it was in fact determining ownership interests in the Oklahoma property. Appellee's allegations in his counterclaim "amount to a claim by [him] of a present equitable title ..., as distinguished from an equitable right to title." *Carmichael v. Delta Drilling Co., supra* at 460.

Appellee cites *McElreath v. McElreath, supra,* as dispositive in favor of the jurisdiction of the trial court to make what he contends is merely an in personam order to convey the Oklahoma mineral rights. *McElreath* holds that a divorce decree entered between Oklahoma residents was in personam and established an obligation binding on a spouse which was enforceable

by judicial proceeding in Texas as a matter of comity. The court stated "[i]t seems settled that the situs state is not required to give full faith and credit to the judgment of a sister state which purports to act in rem and would directly affect the title to land in the situs state." 345 S.W.2d at 733. The obligations created by the divorce decree in *McElreath* are analogous to the personal obligations—to rectify fraud or to enforce a trust or contract—which have traditionally conferred jurisdiction on courts to compel conveyances of out-of-state property.

Appellants' first point of error is sustained. Because of our disposition on this point we need not deal with appellants' other points of error. The judgment of the trial court is set aside and the appeal is dismissed.

Meanwhile, to protect the jurisdiction of this Court and the subject matter of the case, this Court orders that the same injunctive relief entered by the trial court remain in effect so long as the cause remains within the jurisdiction of this Court.