

## NUMBER 13-08-00380-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JANET RAE LOEHR,                                                    Appellant,

v.

ROLAND LOEHR,                                                       Appellee.

**On appeal from the County Court at Law
of Aransas County, Texas.**

## MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant Janet Rae Loehr challenges the final decree of divorce entered by the trial

court enforcing a mediated settlement agreement (MSA or agreement) between Janet and

appellee Roland Loehr. *See* TEX. FAM. CODE ANN. § 6.602 (Vernon 2006). By six issues,

Janet argues that: (1) the trial court erred in denying her motion for new trial because the

MSA was procured by fraud or, alternatively, was the product of mutual or unilateral

mistake; and (2) the trial court lacked jurisdiction to divide the couple's corporate assets and out-of-state real property.  We affirm.

## I.  BACKGROUND

Janet filed for divorce from Roland in the spring of 2007.  On January 28, 2008, Janet and Roland spent the day negotiating a settlement agreement for their pending divorce.  Each party was represented by an attorney and an accountant during the mediation process.  At the end of the day, Janet and Roland and their attorneys signed the MSA, which divided the couple's community and separate properties.  The agreement included, directly above the signature lines, an admonition reading and appearing as follows: "THIS AGREEMENT IS NOT SUBJECT TO REVOCATION."  By signing the MSA, Janet and Roland agreed that  "all related claims and controversies between them are hereby settled in accordance" with the agreement and acknowledged that "the parties and their counsel have throughly reviewed" the agreement and, "where necessary, modified it to conform to the requirements of their agreement."  The agreement was filed with the trial court.

On March 7, 2008, Janet filed a motion for continuance and request for the court to order the parties back to mediation or to submit a revised agreement.  In her motion, Janet asserted that she had been fraudulently induced into signing the MSA; Janet contended that her accountant had been unprepared to assist her at the time of the mediation and that certain properties were incorrectly categorized in the agreement as Roland's separate property.  Roland then filed a motion for entry of judgment on March 10, 2008, asking the court to enforce the MSA.

The trial court held a hearing on the parties' motions on March 13, 2008.  Roland testified that the parties came to an agreement after a day-long mediation.  He stated that

both parties were represented by attorneys and accountants. Roland generally agreed that the negotiation had involved a process of "give and take" and that, although not completely satisfied with the result, he signed the agreement at the end of the day. Janet testified that she experienced some confusion during the negotiation regarding the identity of certain land. However, Janet confirmed in her testimony that "[she] could tell which pieces of property" were which. Janet further testified that she was dissatisfied with the performance of her accountant and blamed him for her inability to recognize certain properties.

At the conclusion of that hearing, the trial court ordered the parties to submit briefing regarding why the MSA should or should not be entered as the final judgment. Evidence attached to Janet's briefing included her affidavit, in which Janet explained her rationale for claiming that Roland had committed fraud. Janet explained that she and Roland had two pieces of property in Woodbury County, Iowa. One of those properties was the separate property of Roland; the couple referred to this property as the "Woodbury" tract. The other was the separate property of Janet; the couple referred to this property as the "Peterson" tract. In her affidavit, Janet contended that Roland misled her by labeling the "Peterson" tract as "Rock Township, Woodbury" in the MSA. Janet also averred that, in the MSA, Roland had listed certain community corporate assets as his separate property, and because of this misplacement, she was not alerted as to this erroneous categorization.

On March 24, 2008, the court entered a final decree of divorce mirroring the terms of the MSA.[1] Janet filed a motion for new trial on April 23, 2008, which included another affidavit that made essentially the same allegations as Janet's prior affidavit. She asked

---

[1] The court entered findings of fact and conclusions of law. Janet does not challenge the trial court's findings and conclusions on appeal. However, because we have a complete record before us, the trial court's findings are not conclusive. *See J & J Marine, Inc. v. Le*, 982 S.W.2d 918, 924 (Tex. App.–Corpus Christi 1998, no pet.).

3

the court for a new trial on her claim for recision or reformation of the MSA based on fraud, mistake, or improper conversion of separate property. A hearing was held, and the court denied her motion on June 3, 2008. This appeal ensued.

## II. DISCUSSION

### A. Mediated Settlement Agreement

By three issues, Janet argues that the trial court erred in refusing to rescind the MSA and denying her motion for new trial.[2] In her second issue, Janet contends that the agreement should have been rescinded because her signature was procured by Roland's fraud. In her third and fourth issues, Janet challenges the enforceability of the agreement on the basis of mutual or unilateral mistake, respectively. She asks this Court to reverse the judgment of the trial court and remand for a new trial.

#### 1. Standard of Review and Applicable Law

We review the trial court's denial of a motion for new trial for abuse of discretion. *In re R.R.,* 209 S.W.3d 112, 114 (Tex. 2006); *Ricks v. Ricks*, 169 S.W.3d 523, 526 (Tex. App.–Dallas 2005, no pet.). A court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules and principles. *Ricks*, 169 S.W.3d at 526; *see also Olvera v. Olvera*, No. 01-07-00231-CV, 2008 WL 598305, at *4 (Tex. App.–Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.).

Under section 6.602 of the family code, an MSA is immediately binding on the parties if: (1) a prominently displayed (e.g. boldfaced, capital letters, or underlined) statement provides that the agreement "is not subject to revocation"; (2) the agreement is signed by the parties; and (3) the agreement is signed by the parties' attorneys who are

---

[2] We address Janet's second, third, and fourth issues before her first issue because our decision on those issues will guide our decision on the first. *See* TEX. R. APP. P. 47.1.

4

present at the time of signing. TEX. FAM. CODE. ANN. § 6.602(b); *see Cayan v. Cayan*, 38 S.W.3d 161, 165 (Tex. App.–Houston [14th Dist.] 2000, pet. denied) (holding that section 6.602 creates an option for divorcing parties whereby their agreement is binding at the time of execution rather than at the time final judgment is rendered). "If a mediated settlement agreement meets [those] requirements[,] . . . a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11 . . . or another rule of law." TEX. FAM. CODE. ANN. § 6.602(c); *see also Herszage v. Herszage*, No. 13-06-00257-CV, 2007 WL 2323979, at *4-5 (Tex. App.–Corpus Christi Aug. 16, 2007, no pet.) (mem. op.). An agreement that meets the requirements of section 6.602 is "more binding than a basic written contract." *In re Joyner*, 196 S.W.3d 883, 889 (Tex. App.–Texarkana 2006, pet. denied). However, a trial court need not enforce an MSA "if it is illegal in nature or was procured by fraud, duress, coercion, or other dishonest means." *Id*. at 890.

2. Fraud

Janet claims that Roland fraudulently induced her into signing their MSA by misrepresenting the nature of certain pieces of property listed on the inventory attached to their agreement. A fraudulent inducement claim requires evidence that: (1) Roland made a material misrepresentation that was false; (2) Roland knew the misrepresentation was false or asserted it without knowledge of its truth; (3) Roland knew Janet intended to act upon the misrepresentation; (4) the misrepresentation was, in fact, relied upon; and (5) such reliance caused Janet injury. *See In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001); *see also Olvera*, 2008 WL 598305, at *4 (addressing fraudulent inducement in the context of a section 6.602 MSA).

Janet asserted in her affidavits that Roland intentionally misled her by mischaracterizing certain property in the MSA. However, Janet's speculations in her

5

affidavits as to Roland's intentions do not prove he made a material misrepresentation that he knew was false. *See Ricks*, S.W.3d at 527 (concluding that wife's bare assertions that the market value of certain marital property was incorrectly recorded in the MSA did not prove that husband misrepresented the true value of the property). In fact, Janet testified at the March 13, 2008 hearing that she was able to identify the properties and that she blamed her accountant for any confusion she experienced regarding the identity of the properties. We conclude that Janet presented no evidence that Roland misrepresented the nature of the properties in the MSA with the intention that Janet act on it to her detriment.

Regardless, by pursuing a section 6.602 agreement, Janet and Roland were removing their divorce from traditional settlement procedures. *See In re Joyner*, 196 S.W.3d at 889 ("[T]he purpose of mediation [under section 6.602] is to let parties settle their property as they see fit, keeping those matters out of the courtroom."); *Cayan*, 38 S.W.3d at 166 (reasoning that the Legislature created a "procedural shortcut" by enacting section 6.602). The trial court was entitled to enforce Janet and Roland's MSA without regard to whether "the terms of the agreement [were] just and right." *Cayan*, 38 S.W.3d at 166. When presented with a valid, binding MSA, a court cannot substitute its own judgment for that of the parties and modify the agreement. *See In re Joyner*, 196 S.W.3d at 890-91. Here, the court had before it an agreement signed by both parties and their attorneys that contained clear and conspicuous language stating the agreement was irrevocable. By signing the agreement, Janet and Roland affirmed that they and their counsel had thoroughly reviewed the contents and agreed that all of their claims were settled by the agreement. We will not reward Janet with "a reprieve from the agreement" merely because she failed to exercise due diligence in reviewing the terms and conditions

6

before signing her name to the MSA. *Cayan*, 38 S.W.3d at 167; *see also Herszage*, 2007 WL 2323979, at *6 (holding that parties to an MSA must protect themselves by reviewing the agreement before signing and refusing to revoke an MSA merely because the wife failed to adequately inspect the terms). Because Janet and Roland's agreement met all the requirements for a binding MSA and because Janet did not prove that Roland fraudulently induced her assent to the agreement, the trial court did not abuse discretion in enforcing the MSA. *See* TEX. FAM. CODE ANN. § 6.602(b); *In re Joyner*, 196 S.W.3d at 889. Accordingly, Janet's second issue is overruled.[3]

### 3. Mistake

In her third and fourth issues, Janet argues that the trial court erred in enforcing the MSA because it was the result of mutual or unilateral mistake. However, Janet provides us with no authority, and we find none binding on this Court, applying the contract doctrine of mistake to section 6.602 agreements. Janet and Roland's agreement under section 6.602 was "more binding than a basic written contract." *In re Joyner*, 196 S.W.3d at 889. Absent fraud, *see Cayan*, 38 S.W.3d at 167, "nothing either party could have done would have modified or voided the [MSA] once everyone had signed it." *In re Joyner*, 196 S.W.3d at 889. Therefore, we conclude that the trial court did not abuse its discretion in denying Janet's motion for new trial on the basis of mistake in the MSA. Janet's third and fourth issues are overruled.

---

[3] In her first issue, Janet claims that the agreement violated family code section 7.002 by awarding Janet's separate property to Roland. *See* TEX. FAM. CODE ANN. § 7.002(b)(1) (Vernon 2006). However, because we have determined that the MSA was not invalidated by fraud, the trial court here did not err in enforcing the terms of Janet and Roland's irrevocable MSA. A court cannot modify the terms of a valid, binding MSA and is not required to assure that the division of property in the MSA is just and right. *See In re Joyner*, 196 S.W.3d 883, 889, 890-91 (Tex. App.–Texarkana 2006, pet. denied). Therefore, we also overrule Janet's first issue because the court appropriately divided the property according to the terms of the MSA.

B. Jurisdiction

By her fifth issue, Janet argues that the trial court lacked subject-matter jurisdiction to divide the couple's out-of-state real property. In her sixth issue, Janet contends that the court lacked jurisdiction to divide the couple's corporate assets—that the court was only permitted to divide shares of stock.

1. Standard of Review

Whether a court has subject-matter jurisdiction is a question of law and is subject to de novo review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

2. Out-of-State Property; Corporate Assets

Citing *Miller v. Miller*, Janet argues that Texas trial courts are not vested with jurisdiction to adjudicate title to land in another state. 715 S.W.2d 786, 788 (Tex. App.–Austin 1986, writ ref'd n.r.e). However, the court here engaged in no such adjudication. The trial court merely enforced an agreement between the parties that was immediately binding when executed. *See Cayan*, 38 S.W.3d at 165; *In re Joyner*, 196 S.W.3d at 890-91 (holding that a trial court is without discretion to modify a valid, binding MSA). Moreover, even in the absence of a section 6.602 MSA, Texas courts have jurisdiction under the family code to award property in a divorce *wherever* that property is situated. *See* TEX. FAM. CODE ANN. § 7.002(b) (Vernon 2006) (emphasis added). As such, the trial court did not err in enforcing Janet and Roland's MSA that divided certain out-of-state property.

With regard to her sixth issue, Janet claims that, because a corporation is an entity in itself separate from its shareholders, the assets of a corporation do not belong to the spouses who own the corporation as community property. Generally citing *McKnight v.*

8

*McKnight*, Janet argues that this separate legal identity prevents a trial court from dividing corporate assets and that, rather, a court is only permitted to divide the spouses' shares of stock. 543 S.W.2d 863 (Tex. 1976). Nevertheless, Janet points us to no law creating an exception to the immediately binding nature of a valid section 6.602 MSA for corporate assets. *See Cayan*, 38 S.W.3d at 165. The family code provides that a party to a properly executed MSA is entitled to judgment on the agreement notwithstanding any other rule of law. *See* TEX. FAM. CODE ANN. § 6.602(c). Here, Janet and Roland entered into a binding MSA; Roland was entitled to enforce that agreement, and the trial court did not err in doing so. *See id.*; *see also Herszage*, 2007 WL 2323979, at *5-6 (enforcing an MSA where the evidence showed that the parties knowingly entered into an irrevocable agreement).

It is important to note that Janet provided this Court with no authority, and, again, we find none, addressing these jurisdictional issues in the context of a section 6.602 MSA. Without more, we are not persuaded that the trial court was without jurisdiction to enforce the binding, irrevocable agreement between Janet and Roland. We overrule Janet's fifth and sixth issues.

## III.  CONCLUSION

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 28th day of August, 2009.

9