COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS


 
 
  
  
 IN RE:  ELAMEX, S.A. DE C.V.,
 ELAMEX USA, CORP., AND
 MOUNT FRANKLIN FOODS, L.L.C.,
  
 
 
 §
  
 §
  
 §
  
 §
  
 § 
  
 
 
  
  
 No. 08-11-00110-CV
  
 AN ORIGINAL
 PROCEEDING IN 
  
 MANDAMUS
  
 
 


O
P I N I O N

            In this original proceeding, Relators seek to
compel Respondent to vacate an order denying their motion to dismiss for lack
of jurisdiction.  For the reasons stated
below, we deny Relators’ petition for writ of mandamus.

Factual and Procedural Background

            This case centers on a dispute among entities
and individuals involved in the candy business.

The Parties

The two Plaintiffs in the underlying suit are
Real-Parties-in-Interest in this mandamus action.  One of the Plaintiffs is Dulces Arbor, S. de
R.L. de C.V. (“Dulces Arbor”), a Mexican corporation.  The other is Blueberry Sales, LLP (“Blueberry
Sales”), a Delaware limited liability partnership that has its principal place
of business in El Paso.[1]  Blueberry Sales is the American counterpart
to Dulces Arbor.[2]

There are seven Defendants in the underlying
lawsuit, but only three of them are Relators in this mandamus action.  Relators are Elamex, S.A. de C.V. (“Elamex
Mexico”), Elamex USA, Corp. (“Elamex USA”), and Mount Franklin Foods, LLC (“MFF”).  Elamex Mexico is a Mexican corporation doing
business in Texas.  Elamex USA is a
Delaware corporation doing business in Texas. 
MFF is a Texas limited liability company.  These three entities are interrelated –
Elamex Mexico owns Elamex USA, which in turn owns MFF – and all operate from or
have offices in El Paso, Texas.

The other Defendants in the underlying suit
are Sunrise Candy, LLC (“Sunrise Candy”), Casas Grandes Confections, LLC (“Casas
Grandes”), Robert J. Whetten (“Whetten”), and David Stewart (“Stewart”).  Sunrise Candy is a Nevada limited liability
company doing business in Texas.  Casas
Grandes is also a Nevada limited liability company doing business in
Texas.  Like Relators, these entities have
offices in El Paso.  Whetten is a
resident of El Paso, who at various times was an executive or board member for
Casas Grandes, Elamex USA, Elamex Mexico, and MFF as well as some other
entities.  Like Whetten, Stewart is a
resident of El Paso, who at various times was also an executive for Elamex
Mexico, Sunrise Candy, and MFF.

The Mexican Real
Property

            At the heart of the
dispute between Plaintiffs and Defendants is a building located in Cuidad Juarez,
Mexico (the Mexican real property) used to manufacture candy.  Throughout the litigation, Dulces Arbor has
maintained that it owns the Mexican real property, which it expanded with
financing provided by several lenders, including Bank of the West.[3]  Dulces Arbor attempted to sell the
Mexican real property to several entities affiliated with the Defendants, but
negotiations broke down between Dulces Arbor and Whetten and Stewart and the
sale was never consummated.[4]  The parties disagree about who is to blame
for the failure to reach an agreement. 
In any event, Dulces Arbor’s
assertion that it owned the Mexican real property remained unchallenged until
early last year when Relators claimed in their motion to dismiss for lack of
subject matter jurisdiction that Dulces Arbor had transferred ownership of the
Mexican real property into a trust for the benefit of the lenders, including
Bank of the West.

The Personal Property

            Another dispute between
Plaintiffs and Defendants concerns machinery and computers (the personal
property) originally leased by Blueberry Sales from C Leasing Company, a
subsidiary of Bank of the West.  Except
for one computer that remained in El Paso but was nonetheless part of the
manufacturing process, the personal property was installed on the Mexican real
property.  Blueberry Sales eventually
purchased the personal property.

The Leases

            Several leases concerning
the occupancy and use of the Mexican real property play a large role in this
dispute as well.  Originally, Dulces
Arbor leased the Mexican real property to Blueberry Sales.  However, that changed when Blueberry Sales
and another entity named Dulces Blueberry, S.A. de C.V. (“Dulces Blueberry”)
combined assets with another entity to create Simply Goodies, LLP (“Simply
Goodies”).[5]  Following this combination, Dulces Arbor
leased the Mexican real property to Dulces Blueberry.  Simply Goodies acted as guarantor of this
lease.  Although the mandamus record is unclear
as to what exactly occurred, MFF’s maquiladora counterpart, Confecciones de
Juarez, S.A. de C.V. (“Confecciones de Juarez”), currently has a submaquila
agreement with Dulces Blueberry to use the Mexican real property.

The Lawsuit

At the time of this mandamus action, Plaintiffs’
live pleading was their sixth amended petition.  Plaintiffs sued Defendants for fraud,
tortious interference, breach of contract, breach of contract under an alter
ego theory, unjust enrichment, and conspiracy.

Plaintiffs allege
that Defendants committed several types of fraud.  First, Plaintiffs claim that Whetten and
Relators indicated that they wanted to purchase the Mexican real property when
they actually had no intention of doing so. 
Thus, Plaintiffs assert that by inducing them to undertake negotiations
for the sale of the Mexican real property, Whetten and Relators caused them to
forebear from taking actions to protect the Mexican real property and the personal
property.  Second, Plaintiffs claim that Relators
used Delgado to acquire information from them and then used that information
against them, and that Relators referred Delgado to Plaintiffs without
disclosing that he would act adversely to Plaintiffs’ interests.  Third, Plaintiffs claim that Defendants fraudulently
“cheated” them out of “the rent payments, other Lease obligations, and other
rights that Dulces Arbor is entitled to under the contract with Dulces
Blueberry and Simply Goodies.”

As for their
conversion claim, Plaintiffs assert that Relators, both on their own and
through other entities, exercised “unlawful dominion and control” over the
personal property and thus deprived them of the use, enjoyment, dominion, and
control over the personal property.  Plaintiffs
have two tortious interference claims.  First,
Plaintiffs allege that Defendants caused Bridge not to consummate the letter of
credit.  Second, Plaintiffs assert that Relators and others prevented
Dulces Blueberry from performing its obligations under its lease with Dulces
Arbor.

            Plaintiffs
contend that Relators breached a contract with Dulces Arbor in which they agreed
to reimburse Dulces Arbor for $25,000 in attorney’s fees that Dulces Arbor
incurred in pursuing the sale of the Mexican real property.

            As
for their breach of contract claim under the theory of alter ego, Plaintiffs
assert that 

Simply Goodies breached its
guaranty agreement with Dulces Arbor, and the corporate veil of Elamex Mexico should
be pierced to render it liable for the breach.

            As to their claim for
unjust enrichment, Plaintiffs allege that Defendants did not compensate
Dulces Arbor for the use of the Mexican real property to produce candy, which was
sold without further compensation to Dulces Arbor.

Finally,
Plaintiffs claim that Defendants, along with others, conspired to commit the
torts described above.

MANDAMUS

            To
obtain mandamus relief from the order denying its motion to dismiss for lack of
subject matter jurisdiction, Relators must meet two requirements.  They must show that the trial court clearly
abused its discretion and that they have no adequate remedy by appeal.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004)(orig.
proceeding).

A trial court
abuses its discretion if it reaches a decision so arbitrary and unreasonable as
to constitute a clear and prejudicial error of law.  In re
Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005)(orig.
proceeding).  When reviewing the trial
court’s decision for an abuse of discretion, we may not substitute our judgment
for that of the trial court with respect to resolution of factual issues or
matters committed to the trial court’s discretion.  See
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992); see also Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242
(Tex. 1985).  However, we are much less
deferential when reviewing the trial court’s determination of the legal
principles controlling its ruling.  See Walker, 827 S.W.2d at 840.  A trial court has no discretion in
determining what the law is or applying the law to the facts, even when the law
is unsettled.  Prudential, 148 S.W.3d at 135. 
A clear failure by the trial court to analyze or apply the law correctly
will constitute an abuse of discretion.  Walker, 827 S.W.2d at 840.

Absent
extraordinary circumstances, mandamus will not issue unless the relator lacks
an adequate remedy by appeal.  In re Van Waters & Rogers, Inc., 145
S.W.3d 203, 210-11 (Tex. 2004)(orig. proceeding).  Whether a clear abuse of discretion can be
adequately remedied by appeal depends on a careful analysis of costs and
benefits of interlocutory review.  In re McAllen Med. Ctr., Inc., 275
S.W.3d 458, 464 (Tex. 2008)(orig. proceeding). 
Because it depends heavily on circumstances, such a cost-benefit
analysis must be guided by principles rather than by simple rules that treat
cases as categories.  See id. 
In addition, we must consider whether mandamus will spare the litigants
and the public “the time and money utterly wasted enduring eventual reversal of
improperly conducted proceedings.”  In re Team Rocket, L.P., 256 S.W.3d 257,
262 (Tex. 2008)(orig. proceeding), quoting
Prudential, 148 S.W.3d at 136.

Motion
to Dismiss for lack of Subject Matter Jurisdiction

            Relators
argue that the trial court abused its discretion in denying their motion to
dismiss for lack of subject matter jurisdiction because Dulces Arbor’s right to
recover money damages against them for the failed sale of, and unlawful use and
occupancy of, the Mexican real property at issue depends on Dulces Arbor’s
disputed interest in that land.  Relators
further contend that their remedy by appeal is inadequate because proceeding to
trial on causes of action over which the trial court does not have jurisdiction
would deprive them of their right to dismissal and constitute an irreversible
waste of judicial and public resources since the relief afforded by an appeal at
the conclusion of trial would be the same as the relief afforded by mandamus:
dismissal.  Because we conclude that
Relators have not shown that the trial court abused its discretion in denying
their motion to dismiss for lack of subject matter jurisdiction, we do not
reach the issue of whether Relators have an adequate remedy by appeal.

Standard
of Review

            Whether
a trial court has subject-matter jurisdiction is a question of law subject to de novo review.  Texas
Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.
2002).  If the trial court lacks subject matter
jurisdiction, the trial court’s judgment must be reversed and the case
dismissed.  City of Garland v. Louton, 691 S.W.2d 603, 605 (Tex. 1985).  A motion to dismiss based on a lack of subject
matter jurisdiction is the functional equivalent of a plea to the jurisdiction.
 Trutec
Oil & Gas, Inc. v. W. Atlas Intern, Inc., 194 S.W.3d 580, 584
(Tex.App.--Houston [14th Dist.] 2006, no pet.); Anderson v. City of San Antonio, 120 S.W.3d 5, 7 (Tex.App.--San
Antonio 2003, pet. denied).  A plea to
the jurisdiction challenges the trial court’s authority to determine the
subject matter of a cause of action.  Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
In deciding a plea to the jurisdiction, the trial court must determine
if the plaintiff has alleged facts that affirmatively demonstrate its
jurisdiction to hear the case.  Miranda, 133 S.W.3d at 226.  The trial court construes the pleadings
liberally in favor of the plaintiff and looks to the pleader’s intent.  Id.  If the pleadings do not affirmatively
demonstrate jurisdiction, but do not negate it outright, then the plaintiff
ought to be afforded the opportunity to amend since the issue is one of
pleading sufficiency.  Id. at 227.  If, however, the pleadings affirmatively
negate jurisdiction, the trial court may grant the plea to the jurisdiction or
the motion to dismiss without allowing the plaintiff an opportunity to
amend.  Id.  The trial court may also
consider evidence in determining a plea to the jurisdiction or a motion to
dismiss, and must do so when necessary to resolve the question of
subject-matter jurisdiction.  Id.

Applicable
Law

            It
is well-settled that Texas courts have no subject matter jurisdiction to
adjudicate title to interests in real property outside of Texas.  Holt v.
Guerguin, 106 Tex. 185, 189, 163 S.W. 10, 12 (1914); Trutec Oil & Gas, 194 S.W.3d at 583; Kelly Oil Co. v. Svetlik, 975 S.W.2d 762, 764 (Tex.App.--Corpus
Christi 1998, pet. denied); Hartman v.
Sirgo Operating, Inc., 863 S.W.2d 764, 766 (Tex.App.--El Paso 1993, pet.
denied).  However, it is also
well-settled that Texas courts have subject matter jurisdiction over lawsuits
relating to real property outside of Texas if the nature of the suit and the
remedy sought directly affect and operate upon the defendant, and not upon the
out-of-state property.  Tex. & Pacific Railway Co. v. Gay,
86 Tex. 571, 589, 26 S.W. 599, 605 (1894); Banco
Minero v. Ross, 106 Tex. 522, 533-35, 172 S.W. 711, 713 (1915).  The determining issue is whether the nature
of the lawsuit in question involves a naked question of title; if it does, the
suit is in rem, if it does not, the
suit is in personam.  Hartman,
863 S.W.2d at 766; Estabrook v. Wise,
506 S.W.2d 248, 249, 253 (Tex.Civ.App.--Tyler 1974, writ ref’d n.r.e.), vacated as moot, 519 S.W.2d 632 (Tex.
1974).  A lawsuit involves the
adjudication of title to real property if title is not involved in a merely
incidental or collateral way, but is actually involved as the basis, as well as
the measure of right of any recovery.  Merit Mgmt. Partners I, L.P. v. Noelke,
266 S.W.3d 637, 646-47 (Tex.App.--Austin 2008, no pet.), citing Kegans v. White,
131 S.W.2d 990, 995 (Tex.Civ.App.--Eastland 1939, writ ref’d).

Discussion

            Relators
believe this case requires the trial court to decide a question of title before
it can render judgment, and make two arguments in support of that contention:
the first factual, the second legal.

As support for
their argument that a question of title has been raised, Relators direct our
attention to two pieces of evidence in the mandamus record.  The first is a copy of a petition filed in
Mexico by the wife of one of the Third-Party Plaintiffs and Cross-Claimants in
the underlying lawsuit.  Citing this
petition, Relators contend that Dulces Arbor’s own documents establish that it
transferred title to the Mexican real property to a Trustee for the benefit of
Bank of the West.  However, Dulces Arbor
did not file the Mexican lawsuit. 
Rather, they are one of the named defendants.  While it is accurate that the Plaintiff in
the Mexican lawsuit asserted that Dulces Arbor conveyed the Mexican real property
in trust, allegations contained in pleadings are not evidence, even if sworn or
verified, and therefore cannot support the conclusion that Dulces Arbor
transferred ownership of the Mexican real property to the trust.  See Laidlaw
Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex.
1995); Americana Motel, Inc. v. Johnson,
610 S.W.2d 143, 143 (Tex. 1980).

            In
addition, the allegation in the petition cannot be characterized as a judicial
admission made by Dulces Arbor because Dulces Arbor is not the pleader, and
there is no evidence in the mandamus record that Dulces Arbor adopted the
pleading as its own.  See Grimes v. Jalco, Inc., 630 S.W.2d
282, 284 (Tex.App.--Houston [1st Dist.] 1981, writ ref’d n.r.e.)(holding that judicial
admissions in pleadings are binding only on the pleader); see also Wise v. Haynes, 103 S.W.2d 477, 482-83 (Tex.Civ.App.--Texarkana
1937, no writ) and Irwin v. Par-Oil Well Servicing
Co., 349 S.W.2d 277, 278 (Tex.Civ.App.--Texarkana 1961, writ ref’d n.r.e.)(together
standing for the proposition that pleadings in other actions which contain
statements inconsistent with a party’s present position are inadmissible unless
otherwise adopted by the party).

            Moreover,
the Plaintiff in the Mexican lawsuit alleged that the Mexican real property was
placed into trust for the purpose of guaranteeing punctual, timely payments on
the loan Dulces Arbor had secured from Bank of the West.  This assertion alone does not address, much
less negate, Dulces Arbor’s legal right to sell or lease the Mexican real
property.  Given that the trust document
is not in the record, neither the trial court nor this Court is able to
ascertain the validity of the allegations in the Mexican lawsuit as related to
the trust.

            The
second piece of evidence upon which Relators rely is an affidavit executed by
Relators’ expert on Mexican law, David Lopez (“Lopez”).  Lopez is an American attorney practicing law
in San Antonio who has written several treatises and scholarly articles on
Mexican law.  Relators contend that
Lopez’s affidavit establishes that only the trustee has the power to pursue
lawsuits and collections with the written consent of Bank of the West, and that
only the courts in Juarez have exclusive jurisdiction over suits construing the
Mexican real property.  Because these
assertions, if true, have no bearing on determining the issue of ownership of
title to the Mexican real property, Lopez’s affidavit is irrelevant to
determining title to the Mexican real property. 
See E.I. du Pont de Nemours &
Co., Inc. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995)(holding that
evidence is irrelevant if it has no relationship to any of the issues in the
case).

It is also unclear
whether Relators rely upon Lopez’s affidavit as evidence that title to the
Mexican real property has been transferred to the trust.  In one section of their brief, Relators do
not cite the affidavit as support for this contention, but elsewhere in the
affidavit, they do.  (Keeping in mind that
our review is de novo, we will consider
Lopez’s affidavit for the proposition that ownership of the Mexican real
property was transferred to a trust.

            Lopez
states that he was asked to opine on “the exclusive jurisdiction of Mexican
courts over real property matters and the claims and remedies, if any,
available to Plaintiffs under Mexican law for the conduct by Defendants alleged
in Plaintiffs’ petition.”  Lopez does not
state he was asked to provide his opinion on the ownership of the Mexican real
property.  Rather, he makes an assumption
regarding ownership of the property. 
Specifically, Lopez states that he reviewed case-specific materials,
including an undated “Contract for Real Property Transfer and Related
Transactions” and a Spanish document dated March 10, 2000, which appears to be the
modification of the aforementioned contract. 
However, this is unclear because there is no English translation of the
document’s title.  Based on his review of
these documents Lopez “assume[s]” that under an irrevocable Mexican collateral
trust, which is not specifically identified as one of the materials he
reviewed, Dulces Arbor transferred its ownership interest in the Mexican real
property to the trustee and that ownership would not revert back to Dulces
Arbor until it fulfilled its loan obligation to Bank of the West.

            We
conclude that Lopez’s affidavit is insufficient to establish that title to the
Mexican real property was held in a trust as Relators contend or that ownership
of the property was transferred to anyone, such that title to the property may
be legitimately questioned.  First, as
mentioned above, Lopez did not conclude that the trust, rather than Dulces
Arbor, owns the Mexican real property. 
Instead, Mr. Lopez assumes
that fact.  Mere speculation in an
affidavit is insufficient to establish a conclusion.  See
Ingram v. Deere, 288 S.W.3d 886, 903 (Tex. 2009)(holding that the testimony
of a defense expert, who admitted that his statements were unsupported and mere
assumptions, constituted speculation insufficient to establish that the plaintiff
contributed valuable property to the clinic). 
Second, Lopez apparently bases his assumption that Dulces Arbor does not
own the property on a document he labels as an irrevocable Mexican collateral
trust, but, this was not one of the documents identified by Lopez that he
reviewed.  However, since Lopez never states
that he actually reviewed the irrevocable Mexican collateral trust document and
relied on it as a basis for his assumption, there is no way to corroborate his
assertions, particularly since the document is not included in the record.  As a result, the underlying basis of Lopez’s conclusion
is unreliable.  If the basis underlying
an expert’s opinion testimony is unreliable, the expert’s testimony is
unreliable and legally constitutes no evidence and may not be considered.  See Merrell
Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 714 (Tex. 1997).

            No
competent evidence supports the allegation that Dulces Arbor transferred ownership of the Mexican real property
to a trust.  Even were these documents referred
to above competent evidence, they serve only to raise a fact issue.  We may not consider disputed issues of fact
in an original mandamus proceeding, see West
v. Solito, 563 S.W.2d 240, 245 (Tex. 1978)(holding that an appellate court
may not deal with disputed areas of fact in an original mandamus
proceeding).  We are also mindful that when
reviewing a trial court’s determination for an abuse of discretion, we may not substitute
our judgment for that of the trial court with respect to resolution of factual
issues or matters committed to the trial court’s sound discretion.  See
Walker, 827 S.W.2d at 839.

Faced with a mandamus
record devoid of the necessary proof to establish that Dulces Arbor does not
own the Mexican real property, we cannot conclude that the trial court clearly
abused its discretion in denying the motion to dismiss for lack of subject
matter jurisdiction.

            Relators
also contend that, as a matter of law, the trial court cannot address Dulces
Arbor’s claims without first adjudicating issues related to the Mexican real
property.  Again, we are mindful that
when reviewing the trial court’s determination of the legal principles controlling
its ruling, a trial court has no discretion in determining what the law is or in
applying the law to the facts, even when the law is unsettled, and a clear failure
by the trial court to analyze or apply the law correctly will constitute an
abuse of discretion.  Prudential, 148 S.W.3d at 135; Walker, 827 S.W.2d at 840.  On the other hand, Relators cite no authority
for their proposition that the trial court, as a matter of law, had a duty to
adjudicate title as a prerequisite to address Dulces Arbor’s claims.  Given the lack of competent evidence offered
in support of Relators’ arguments, we cannot conclude that the trial court clearly
abused its discretion in denying the motion to dismiss for lack of subject
matter jurisdiction.

Having disposed of
Relators’ arguments, we hold that the trial court did not abuse its discretion
in denying their motion to dismiss based on lack of subject matter
jurisdiction.

CONCLUSION

Relators’ petition
for a writ of mandamus is denied.

 

May
2, 2012

                                                                                    CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)

Chew,
C.J. (Senior)(Sitting by Assignment)











[1]
Dulces Arbor and Blueberry Sales are also Third-Party Defendants in the
underlying suit.

 





[2]
In the underlying suit, Raymond Ducorskyand
Brad Ducorsky are Third-Party Defendants, as well as Third-Party Plaintiffs and
Cross-Claimants, whereas Mark Ducorsky is only a Third-Party Defendant.  None of the Ducorskys are a party in this
mandamus action.





[3]
Bank of the West is now WestStar Bank.

 





[4]
Whetten referred the Ducorskys to an attorney in El Paso named Hector Delgado
to represent Dulces Arbor in the negotiations. 
The Ducorskys were apparently unaware that Delgado was representing the
other entities involved in the transaction.

 





[5]
Bridge Healthcare Finance, LLC, and
Bridge Opportunity Finance, LLC (collectively “Bridge”) provided financing for
this transaction.